PEOPLE *v.* SPAULDING.

INTOXICATING LIQUORS—CRIMINAL LAW—FALSE LABEL—COMMON CARRIERS.

> Evidence, in a prosecution for violation of the Pray act (2 Comp. Laws 1915, § 7118 *et seq.*), that defendant had liquor shipped under a fictitious name, from Chicago to a point in a wet county, and then transported same by means of a common carrier dray line into a local-option county, *held*, sufficient to sustain a conviction. OSTRANDER, C. J., and BIRD, BROOKE, and KUHN, JJ., dissenting.

Exceptions before judgment from Calhoun; North, J. Submitted January 18, 1918. (Docket No. 195.) Decided March 28, 1918.

Fay Spaulding was convicted of violating the local-option law. Affirmed by a divided court.

*Howard W. Cavanagh* and *John W. Bailey,* for appellant.

*Adrian F. Cooper,* Prosecuting Attorney, and *James Cleary,* Assistant Prosecuting Attorney, for the people.

FELLOWS, J. I do not agree with Mr. Justice BIRD in the result reached in this case. The record satisfies me, as it did the jury, that the shipment of these goods to Parma was camouflage, pure and simple, so transparent as to deceive no one when the actual facts were developed. The jury found, and they were justified in finding, that these eight barrels and the one box of whisky were shipped by Morand Brothers at Chicago to defendant at Battle Creek, via Parma, with a fictitious consignee, and a fictitious point of consignment.

Defendant was not transporting liquor upon his own

person or in his own conveyance into a local option county, but was completing its transportation from Chicago to Battle Creek by means of a dray line employed by him for that purpose. The drayman, who describes himself, and properly so, as a public carrier, was in the business of transporting merchandise by auto truck, at the rate of fifty cents per mile one way, and was, in the contemplation of this act, as much engaged in the business of transportation as was the Michigan Central Railroad Company which brought this liquor part way on its journey. In *Lawson* v. *Judge of Recorder's Court,* 175 Mich. 375, this court, speaking through Mr. Justice KUHN, said:

"Persons who are engaged in the business of draymen or truckmen for transportation of goods and merchandise within a city are held to be common carriers. A common carrier has been defined as 'one who undertakes for hire or reward to transport the goods of such as choose to employ him from place to place.' 6 Cyc. p. 365. The business of a public moving van company clearly comes within this definition and there can be no question that they carry on their business subject to the rules governing common carriers. The business being public in character, it has been repeatedly held by the courts that it is subject to reasonable public regulations."

In the case of *People* v. *Bola,* 197 Mich. 370, cited by Mr. Justice BIRD, it was stated by Mr. Justice BROOKE:

"The only question involved is whether a resident in a so-called local option county may purchase liquor in a county where such purchase and sale is lawful and transport the same, either upon his person or in his own conveyance, into a local option county for his own personal use, without having the packages labeled in accordance with the section above quoted."

In that case defendant had purchased the liquor in a "wet" county and brought it to his home in his own

conveyance, so that there was neither consignor nor consignee. This is made clear by what was further said by Justice BROOKE:

"The legality of the sale of the liquor in Saginaw county to respondent is not involved. He became its owner in a 'wet' county. Thereafter he was neither consignor nor consignee of the same, and the section in question has no application to him in relation thereto."

The instant case, however, is radically different. Here we have a consignor (Morand Brothers), a consignee (the defendant, not the fictitious A. J. Wise who did not exist), a common carrier (the auto truck dray line), which was, by direction of defendant and in his employ, transporting liquor through a dry county with a false label upon it, completing the last lap of its journey from Chicago to Battle Creek via Parma. Under such circumstances the "Pray act" was being violated, both in letter and spirit, and it does not require judicial legislation to say so. If defendant had employed the interurban line between Parma and Battle Creek to complete the transportation of this liquor with its false label, from Chicago to Battle Creek, no one would seriously contend that the "Pray act" had not been violated. What difference does it make that he selected another common carrier, one using the public highway instead of steel rails, using gasoline instead of steam for its motive power? None whatever. This legislation must not be rendered nugatory by too narrow a construction. As this presents the only meritorious question in the case I think the conviction should be affirmed.

MOORE, STEERE, and STONE, JJ., concurred with FELLOWS, J.

BIRD, J. (*dissenting*). Respondent, Spaulding, was informed against and convicted of the offense of hav-

ing shipped, or caused to be shipped, into Calhoun county eight barrels and one box of whisky with false labels thereon, in violation of the so-called "Pray law," the same being Act No. 381 of the Public Acts of 1913 (2 Comp. Laws 1915, § 7118 *et seq.*). It is charged that said labels were false in that they did not give the true name and address of the consignee. There was very little conflict in the testimony. The record discloses that respondent is a druggist in the city of Battle Creek, Calhoun county; that the sale of intoxicating liquors in that county is prohibited by law; that said liquor was shipped by Morand Bros., of Chicago, via Michigan Central Railway to A. J. Wise, of Parma, Jackson county, a so-called "wet county"; that defendant engaged a truck and drove to Parma, produced the bill of lading, and was given possession of the whisky; that the same was loaded on his truck and while he was returning to Battle Creek and while in Calhoun county, the truck was intercepted by the sheriff of Calhoun county, who seized the whisky and arrested respondent.

It was the claim of the people that the liquor was the property of respondent and that he was the real consignee and, therefore, the labels were false.

The contention of the respondent is that the information does not charge an offense known to the law and that the testimony does not prove a violation of any law of this State. That part of Act No. 381 material to this controversy is section 2, which reads as follows:

"It shall be unlawful for any person to consign, ship or transport in any manner whatsoever, or deliver any of the liquors mentioned in section one of this act to any person in any township, municipality or county where by law, either local or State-wide in its operation, the manufacture and sale of such liquors for beverage purposes is prohibited, or for any person residing in such prohibited territory to receive any

such liquors, unless there appears upon the outside of the package containing any such liquors the following information: Name and address of the consignor; name and address of the consignee; kind and quantity of liquor therein contained, and the statement either that such liquors are for personal and family use of the consignee, or for medicinal, mechanical, chemical, scientific or sacramental purposes, or that consignee is a person authorized to sell such liquors for medicinal, mechanical, chemical, scientific or sacramental purposes. Any consignee accepting or receiving any package containing any such liquors upon which appears a false statement, or any person consigning, shipping, transporting or delivering any such package, knowing that said statement appearing upon the outside thereof is false, shall be deemed guilty of violating the provisions of this act."

It will be observed that this act operates only in counties where the sale of liquor is prohibited. By reason of this the provision in regard to labels would be in force in Calhoun county but not in Jackson county. Inasmuch as the whisky was consigned to respondent in Jackson county and delivered to him there it was unimportant what labels the packages bore, or whether they bore any. It is charged by the people and admitted by respondent that the whisky was his property. It being his property he had the right to remain in Jackson county with it, or proceed to Calhoun county with it. *People* v. *Bola*, 197 Mich. 370. (The question as to whether the provisions with reference to storing and selling were violated after he arrived in Calhoun county are questions with which we are not concerned on this record.) But the prosecutor argues that it was a transportation which reached from Chicago through Parma to Battle Creek. In other words, that it was a continuous transportation between Chicago and Battle Creek, and, therefore, came within the inhibition of the act. The difficulty of considering it a continuous transportation from Chi-

cago to Battle Creek via Parma is that the transportation contemplated by the act had ceased at Parma when the carrier delivered the packages to their owner, the respondent. Between Chicago and Parma there were consignor, consignee and carrier. Between Parma and Battle Creek there was no consignor nor carrier, simply the consignee conveying his own property. The undisclosed intention of respondent to convey the liquors from Parma to Battle Creek tacked on to the bill of lading would not, within the meaning of the act, constitute a shipment between Chicago and Battle Creek. Had respondent purchased the liquor for himself in Jackson city, and carried it into Calhoun county, he would have violated no provision of this act. (*People* v. *Bola, supra.*) We think the present situation is no different in principle. If we were to give this act the construction contended for by the prosecutor, we should be obliged to go farther than the legislature has gone, and also set at naught our holding in the case of *People* v. *Bola.*

The judgment of conviction should be set aside and the respondent discharged.

OSTRANDER, C. J., and BROOKE and KUHN, JJ., concurred with BIRD, J.